IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Cargill Meat Solutions Corp. Wage and Hour Litigation | No. 3:06-cv-00513-WJN |

## SETTLEMENT AGREEMENT

The parties to the above-captioned consolidated civil action, by and through their attorneys, enter into the following Settlement Agreement (the "Agreement").

## RECITALS

**WHEREAS**, on March 13, 2006, plaintiff Farida Rahman commenced a lawsuit against Cargill Meat Solutions Corporation ("CMSC") in the United States District Court for the Middle District of Pennsylvania ("Court"), Case No. 3:06-cv-00532, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*; the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 33, *et seq*. ("PMWA") and the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. § 260.1, *et seq*. On March 23, 2006, Rahman filed an Amended Class Action Complaint, which added John Livezey as a named plaintiff (collectively "Plaintiffs"). In this action, the Plaintiffs sought to pursue their FLSA claims as a collective action based on 29 U.S.C. § 216(b) and their state law claims as a class action pursuant to Fed. R. Civ. P. 23.

**WHEREAS**, on or about March 10, 2006, and July 20, 2006, plaintiffs Larry Curtis, Betty Tucci, Mary Robinson, Jason Robinson, Tim Cole, Brett Billings, and Chad Maynard commenced lawsuits against CMSC, Case Nos. 3:06-cv-00513-WJN and 3:06-cv-01420-WJN, alleging, *inter alia*, claims under the FLSA, PMWA, PWPCL and under common law. In these

actions, the Plaintiffs sought to pursue, *inter alia*, state law claims as a class action pursuant to Fed. R. Civ. P. 23.

**WHEREAS**, in an order dated August 14, 2006, the Court conditionally certified an FLSA collective class potentially consisting of approximately 4100 current and former employees at CMSC's Hazleton, Pennsylvania facility ("Hazleton facility") and approximately 2300 current and former employees at CMSC's Wyalusing, Pennsylvania facility ("Wyalusing facility"). Since then, approximately 388 current or former employees at the Hazleton facility have opted in. These individuals are referred to herein as the "Hazleton Opt-Ins."

**WHEREAS**, in an order dated August 15, 2006, the Court consolidated Case Nos. 3:06-cv-00513, 3:06-cv-00532 and 3:06-cv-01420 under the above caption.

**WHEREAS**, the parties have previously settled all claims pertaining to the Wyalusing facility, including those of plaintiff Livezey in Case No. 3:06-cv-00532 and the claims of all plaintiffs in Case Nos. 3:06-cv-00513 and 3:06-cv-01420, and, by order dated July 26, 2007, the Court approved the Wyalusing settlement and dismissed all legal claims challenging CMSC's alleged practices at its Wyalusing facility. As such, the only remaining legal claims are those of Farida Rahman, as asserted in Case No. 3:06-cv-00532, and the Hazleton Opt-Ins.

**WHEREAS,** in an order dated April 10, 2008, the Court denied in part and granted in part, a motion for summary judgment filed by CMSC, including the dismissal of Plaintiffs' claims under the PWPCL and acknowledging Plaintiffs' concession that they did not have a viable claim for breach of contract.

**WHEREAS,** CMSC now recognizes that the issues presented by the remaining claims involving the Hazleton facility are unlikely to be resolved without extensive and costly further litigation that will cause inconvenience, distraction, disruption, delay, and expense

disproportionate to the potential benefits of litigation, and CMSC has taken into account the risks and uncertain outcome inherent in any litigation.

**WHEREAS**, the Plaintiffs recognize the expense and difficulties of continued litigation involving the Hazleton facility through trial and subsequent appeals, as well as the risk and uncertainty inherent in any litigation and, further, recognize the uncertainty of the success or failure of their claims.

**WHEREAS**, the parties have agreed to settle the Plaintiffs' claims relating to the Hazleton facility.

**NOW, THEREFORE**, in consideration of the promises, waivers, releases, and agreements set forth here, the parties agree that the above recitals are incorporated in this Agreement, and further agree as follows:

1. **CONDITION PRECEDENT.** The terms of this Agreement will be subject to the approval of the Court and, absent such approval, this Agreement shall be null and void.

2. **WAIVER AND RELEASE.** In consideration for the benefits described in this Agreement, each Settlement Participant, as defined in Paragraph 4 below, will compromise, settle, waive, release, discharge, and dismiss with prejudice all claims, rights, grievances, contract violations, or causes of action arising out of or relating to any alleged violation of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*; the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 33, *et seq*; breach of contract; the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq*; unjust enrichment; or any other federal, state or local law, statute, or regulation concerning unpaid wages, overtime wages, or the computation or payment of wages or overtime compensation for work performed by Settlement Participants at the Hazleton facility during the Relevant Time Period, as defined in Paragraph 5 below, whether now known

or unknown, that have been, or could have been asserted in this action, in any action in any court of competent jurisdiction, or in any grievance proceeding, arbitration, or federal or state agency administrative proceeding, by any Settlement Participant against CMSC and/or any of its present or former officers, directors, principals, employees, agents, shareholders, attorneys, representatives, affiliates, parents, subsidiaries, successors or assigns, which claims, rights, grievances, contract violations, or causes of action are in connection with, arose out of, or will arise out of or relate to any of the allegations or claims that have been, or could have been asserted in the above-captioned action (the "Settled Claims").

3. **CONSIDERATION.** In consideration for the full settlement, waiver, release, discharge, satisfaction, and compromise of all Settled Claims, CMSC agrees that it will: (a) create a back pay settlement pool of up to $400,000.00 ("the Back Pay Pool"), to be distributed to Settlement Participants by the Claims Administrator in the manner and pursuant to the procedures set forth in this Agreement; (b) pay reasonable attorney's fees and litigation costs to Plaintiffs' counsel in the aggregate amount of $200,000.00, which will be distributed and divided in the manner and pursuant to the procedures set forth in Paragraph 14 below; and (c) pay the Claims Administrator an amount up to a maximum of $25,000.00 to cover the costs of the administration of this settlement.

4. **SETTLEMENT PARTICIPANTS.** The "Settlement Participants" will consist of: (i) named Plaintiff Farida Rahman; (ii) the 388 current or former Hazleton employees who have opted into this case; and (iii) any individuals whose names appear on the Eligibility List described in Paragraph 8 and who elect to participate in this settlement in the manner and pursuant to the procedures set forth in Paragraphs 8 through 10.

5. **RELEVANT TIME PERIOD.** The Relevant Time Period shall extend from March 13, 2004 through March 13, 2009.

6. **PLAINTIFFS' LEAD COUNSEL.** Attorney Brian McCafferty of the law firm of Kenney Egan McCafferty & Young and Attorney Peter Winebrake of The Winebrake Law Firm, LLC will serve as plaintiffs' Lead Counsel for purposes of this settlement.

7. **CLAIMS ADMINISTRATOR.** Within five (5) business days of the Court's approval of this settlement, the parties will mutually agree upon a Claims Administrator to administer the terms of this settlement and distribute back pay checks to eligible Settlement Participants.

8. **NOTICE OF SETTLEMENT AND ELIGIBLITY REQUIREMENTS TO PARTICIPATE IN SETTLEMENT PROCEEDS.**

   A. **Eligibility List.** Within sixty (60) days after this Agreement has been approved by the Court, CMSC shall provide Lead Counsel and the Claims Administrator with an Eligibility List, Exhibit 1, which shall identify: (i) all covered jobs, and the departments in which those jobs are located; (ii) the names and last known addresses of all current and former CMSC Hazleton employees who CMSC has determined are potentially entitled to compensation from the settlement fund because they were employed in a covered job during any workweek during the Relevant Time Period; and (iii) the amount of Back Pay Pool proceeds to which each individual is entitled under this Agreement and the basis for that calculation (consisting of the respective dates each individual worked in one or more of the covered jobs). CMSC shall also provide Lead Counsel an opportunity to review the records upon which CMSC relied in determining the individuals appearing on the Eligibility List and calculating the amounts due each individual. Lead Counsel shall have fifteen (15) days from receipt of the Eligibility List

and supporting documentation to challenge the accuracy of any aspect of the Eligibility List. Once Lead Counsel and CMSC's Counsel have finalized the Eligibility List, it shall be final and binding upon all Settlement Participants and used by the Claims Administrator to distribute back pay checks to Eligible Settlement Participants.

B. **Notice of Settlement to the Hazleton Opt-Ins Currently Employed by CMSC.** Within thirty (30) days of the finalization of the Eligibility List, CMSC shall issue to the Hazleton Opt-Ins who are currently employed by CMSC, in conjunction with the distribution of their paychecks, the following: (i) a document entitled "Notice of Settlement," substantially in the form attached hereto as Exhibit 2; and (ii) a document entitled "Computation of Your Settlement Share," substantially in the form attached hereto as Exhibit 3. These individuals shall be included among the Settlement Participants.

C. **Notice of Settlement to the Hazleton Opt-Ins No Longer Employed by CMSC.** Within thirty (30) days of the finalization of the Eligibility List, the Claims Administrator shall mail to the Hazleton Opt-Ins who are no longer employed by CMSC, the following: (i) a document entitled "Notice of Settlement," substantially in the form attached hereto as Exhibit 2; and (ii) a document entitled "Computation of Your Settlement Share," substantially in the form attached hereto as Exhibit 3. These individuals shall be included among the Settlement Participants.

D. **Notice of Settlement to Currently Employed Individuals Whose Names Appear on the Eligibility List and Who Are Not Among the 388 Hazleton Opt-Ins.** Within thirty (30) days of the finalization of the Eligibility List, CMSC shall issue to all current employees whose names appear on the Eligibility List but who are not among the 388 Hazleton Opt-Ins, in conjunction with the distribution of their paychecks, the following: (i) a document

entitled "Notice of Settlement and Opportunity to Join Action," substantially in the form attached hereto as Exhibit 4; (ii) a document entitled "Computation of Your Settlement Share," substantially in the form attached hereto as Exhibit 3; (iii) a document entitled "Consent to Join Suit as Party Plaintiff and Participate in the Court-Approved Settlement" (the "Consent to Join Form"), substantially in the form attached hereto as Exhibit 5; and (iv) a postage-paid return envelope addressed to the Claims Administrator. These individuals shall become Settlement Participants by completing the Consent to Join Form and returning it to the Claims Administrator in an envelope postmarked no later than sixty (60) days after the finalization of the Eligibility List.

    E. **Notice of Settlement to Formerly Employed Individuals Whose Names Appear on the Eligibility List and Who Are Not Among the 388 Hazleton Opt-Ins.** Within thirty (30) days of the finalization of the Eligibility List, the Claims Administrator shall mail to all former employees whose names appear on the Eligibility List but who are not among the 388 Hazleton Opt-Ins the following: (i) a document entitled "Notice of Settlement and Opportunity to Join Action," substantially in the form attached hereto as Exhibit 4; (ii) a document entitled "Computation of Your Settlement Share," substantially in the form attached hereto as Exhibit 3; (iii) a Consent to Join Form, substantially in the form attached hereto as Exhibit 5; and (iv) a postage-paid return envelope addressed to the Claims Administrator. These individuals shall become Settlement Participants by completing the Consent to Join Form and returning it to the Claims Administrator in an envelope postmarked no later than sixty (60) days after the finalization of the Eligibility List.

    F. **Undelivered Mailings.** Within fifty (50) days of the finalization of the Eligibility List, the Claims Administrator shall provide Plaintiffs' Lead Counsel with a list

containing the names and last known addresses of all former employees whose notice of settlement mailings are returned as undeliverable. The Plaintiffs' Lead Counsel and the Claims Administrator shall make a reasonable and good faith effort to determine valid mailing addresses for such individuals. Within seventy (70) days of the finalization of the Eligibility List, the Claims Administrator shall resend the notice of settlement mailings to all such individuals for whom revised addresses have been obtained. It is agreed that the time period for responding to notice of settlement mailings shall be tolled for affected individuals during the time period provided in this paragraph.

G. **Posting of Announcement of Settlement.** CMSC shall post an announcement concerning the settlement at the Hazleton facility on employee bulletin boards customarily used for posting similar information, for a period of time commencing fifteen (15) days from the finalization of the Eligibility List until the deadline has elapsed for individuals to participate in this settlement. The announcement, the language of which shall be negotiated between the parties, shall briefly describe the settlement. CMSC additionally agrees that it will instruct all of the managers and supervisors at the Hazleton facility that they shall not in any way discourage any individuals on the Eligibility List from participating in the settlement or receiving the back pay amounts which they are eligible to receive under this settlement.

9. **COMPUTATION OF SETTLEMENT SHARES AND ALLOCATION OF BACK PAY POOL.** As described in Paragraph 8 above, notice packages distributed to potential Settlement Participants will be accompanied by a "Computation of Your Settlement Share" form, in the form set forth in Exhibit 3, which will state the gross amount each individual is eligible to receive from the proceeds of the Back Pay Pool if he/she becomes a Settlement Participant. Each Settlement Participant will be entitled to a *pro rata* share of the Back Pay Pool

Award") based on the percentage of time, measured in full calendar weeks, that he or she was employed in a covered production or support job at the Hazleton facility during the Relevant Time Period. The maximum Settlement Award to which a single Settlement Participant will be entitled is $650.00, less applicable withholding. A Settlement Participant will be entitled to this maximum Settlement Award if he or she was employed during the entire Relevant Time Period. The Settlement Award paid to Settlement Participants employed for less than the entire Limitations Period will be a percentage of the maximum, as stated above. For example, if a Settlement Participant was employed for 50 percent of the Relevant Time Period, his or her Settlement Award would be 50 percent of the maximum ($325.00). There is a rebuttable presumption that CMSC's personnel and payroll records are correct, but Settlement Participants will have the opportunity, should they disagree with CMSC's records, to provide documentation and/or an explanation to show contrary employment dates. The parties understand that CMSC's total back pay liability under this Agreement for all Eligible Settlement Participants, including the enhancement payment for named Plaintiff Farida Rahman described below in paragraph 15, will not exceed $400,000.00. If the total of the Settlement Awards calculated for Settlement Participants exceeds $400,000.00, each Settlement Participant's Settlement Share, as defined above, will be reduced *pro rata* until the total equals $400,000.00.

10.     **ADDITIONAL OPT-IN PERIOD.** To ensure that all individuals whose names appear on the Eligibility List are given an opportunity to become Opt-In Plaintiffs, the parties agree that they will file an agreed-upon joint motion to extend the time in which individuals may file consents to become Opt-In Plaintiffs for a period of sixty (60) days following the date the Claims Administrator mails or provides the Notice of Settlement to potential Settlement Participants.

11. **PAYMENT OF SETTLEMENT PROCEEDS.** Within 120 days of the finalization of the Eligibility List, the Claims Administrator will mail a check to each Settlement Participant in the amount of his/her Settlement Share, as described in paragraph 9 above, less any amounts withheld for state, federal and/or local employment taxes, unless their claim forms were returned as undeliverable and re-mailed pursuant to paragraph 8 above.

12. **SETTLEMENT CHECKS.** Checks issued to Settlement Participants will be made payable to the Settlement Participant. On the reverse of each settlement check will be printed above the space for endorsement a statement in substance that, by cashing the check, the Settlement Participant fully and finally waives all Settled Claims against CMSC pursuant to this Agreement ("Waiver Warning"). Each settlement check also will bear a legend directing the payer's bank not to accept the settlement check for payment if: (a) the Settlement Participant cannot show proper identification; (b) the settlement check is unsigned; or (c) the waiver warning, or any part of it, has been altered or deleted.

13. **UNCASHED SETTLEMENT CHECKS.** If any settlement checks are uncashed within ninety (90) days following the most recent mailing or providing of settlement checks, they will be canceled and voided, and the aggregate amount of such canceled and voided checks will revert to CMSC. By failing timely to cash their checks, the Settlement Participants will be deemed to have waived irrevocably any rights in or claim to their pro rata share of the settlement proceeds. The settlement checks will be printed to so advise Settlement Participants.

14. **DISTRIBUTION AND ALLOCATION OF ATTORNEY FEES AND COSTS.** Within thirty (30) days after this Agreement has been approved by the Court, CMSC shall distribute the total amount of $200,000.00 in attorney fees to Plaintiffs' Lead Counsel pursuant to Lead Counsel's written instructions. It is agreed and understood between the parties

that such sum covers the entirety of Plaintiffs' attorneys' fees and costs expended in furtherance of or related to any of the Settled Claims involving current or former employees at the Hazleton facility, without regard to whether the fees or costs were incurred in Case No. 3:06-cv-00532, Case No. 3:06-cv-01420 or Case No. 3:06-cv-00513 either prior to or subsequent to the consolidation of those actions. The payment to Settlement Participants of proceeds from the Back Pay Pool, described in this Agreement, is not contingent upon Plaintiffs' counsel's receipt of the entire $200,000.00 payment described in this paragraph, and the Court's disapproval of any portion of the $200,000.00 payment to plaintiffs' counsel shall not be grounds for voiding other provisions of this Agreement.

15. **ENHANCEMENT PAYMENT FOR REPRESENTATIVE PLAINTIFF.** Subject to Court approval, an enhancement payment in the amount of one thousand five hundred dollars ($1,500.00) will be paid to Farida Rahman as the named plaintiff for her efforts in bringing and prosecuting this matter. This payment shall be deducted from the Back Pay Pool prior to any distributions to eligible Settlement Participants.

16. **RETENTION OF JURISDICTION FOR DISPUTE RESOLUTION.** Unless otherwise ordered, the Court shall retain jurisdiction over the Parties and, if necessary, shall adjudicate any disputes involving the application or interpretation of the terms and provisions of this Agreement.

17. **FINAL JUDGMENT AND ORDERS OF DISMISSAL.** As soon as practicable after the issuance of the settlement checks, unless such time is extended by agreement of the parties or by the Court, CMSC will certify in filings with the Court that all amounts under the settlement, less any amounts withheld or required to be deducted by law, have

been paid, and the parties jointly will move the Court for entry of a Stipulated Judgment and Order of Dismissal of all claims involving the Hazleton facility.

18. **NON-ADMISSION.** Whether or not this Agreement becomes effective, neither this Agreement nor any exhibit, document, or instrument delivered hereunder, nor any statements, negotiations, transactions, or proceedings in connection therewith, in any event may be construed as, or deemed to be, or offered in this or any other action or proceeding (except as may be otherwise provided in Exhibit 1, Exhibit 2 and/or Exhibit 4 attached hereto) as evidence of, *inter alia*, (a) plaintiffs' valuation of the damages recoverable at trial; (b) an admission or concession on the part of CMSC of any liability or wrongdoing; or (c) an admission or concession on the part of CMSC that any Settlement Participant has suffered any injury, loss, or damage. By entering into this Agreement, CMSC does not admit that it violated the FLSA or any other federal, state or local law in any respect whatsoever.

19. **CONFIDENTIALITY.** Neither the Parties nor their counsel, without the prior written approval of counsel for the other Parties (which approval may be withheld in a Party's sole discretion), shall issue, authorize, or contribute to the preparation or dissemination of any press release or any other public statement concerning this Agreement or any of its terms, or sponsor or participate in any press conference, interview, media appearance, or other public discussion concerning this Agreement or any of its terms.

20. **NO WAIVER.** The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement or any of its terms.

21. **ENTIRE AGREEMENT.** This Agreement and the Exhibits attached hereto constitute the entire agreement between and among the Parties and supersede all prior

agreements or understandings, if any, whether oral or written, with regard to the subject matter hereof between and among the Parties. The Agreement may not be modified or amended except in a writing signed by or on behalf of all Parties hereto or their successors in interest.

22. **SUCCESSORS AND ASSIGNS.** The Agreement, upon taking effect, shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, parents, subsidiaries, affiliates, successors, and assigns and upon any corporation, partnership, or other entity into or with which any Party has merged or consolidated or may merge or consolidate.

23. **EXHIBITS.** The Exhibits attached hereto are hereby incorporated by reference as if fully set forth herein.

24. **GOVERNING LAW.** This Agreement shall be construed and enforced in accordance with the laws of the United States and the Commonwealth of Pennsylvania.

25. **AUTHORITY TO SIGN.** Each of the attorneys executing this Agreement warrants and represents that he has been duly authorized and empowered to execute this Agreement on behalf of and to bind the Party or Parties on whose behalf he/she signs.

26. **MISCELLANEOUS.** This Agreement has been mutually prepared by the Parties, represented and assisted by counsel, and will be construed according to its fair meaning and not for or against any of the Parties.

27. **COUNTERPARTS.** This Agreement may be executed in any number of actual or telecopied counterparts and by the different Parties on separate such counterparts, each of which when so executed and delivered shall be an original, whether actual or a facsimile copy. The executed signature pages from each counterpart may be joined together and attached to one such original, which shall then constitute one and the same instrument.

28. **EXTENSIONS OF TIME.** The Parties may agree to reasonable extensions of time to carry out any of the provisions of the Agreement.

**IN WITNESS WHEREOF**, the Parties, by their counsel, have executed this Agreement, intending to be legally bound by it.

Dated: February 27, 2009

| **LEAD COUNSEL FOR PLAINTIFFS** | **COUNSEL FOR DEFENDANT CARGILL MEAT SOLUTIONS CORPORATION** |
|---|---|
| */s/ Peter Winebrake* | */s/ Joseph E. Tilson* |
| Peter Winebrake, Esq.<br>THE WINEBRAKE LAW FIRM, L.L.C.<br>Twining Office Center, Suite 114<br>715 Twining Road<br>Dresher, PA 19025<br>(215) 884-2491 | Joseph E. Tilson, Esq.<br>MECKLER BULGER TILSON MARICK & PEARSON, LLP<br>123 N. Wacker Drive, Suite 1800<br>Chicago, IL 60606<br>(312) 474-7880 |

Brian P. McCafferty, Esq.
KENNEY EGAN McCAFFERTY & YOUNG
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
(610) 940-9099

Todd O'Malley, Esq.
Mary Ann Lucas, Esq.
O'MALLEY & LANGAN, PC
Mulberry Professional Plaza
426 Mulberry Street
Scranton, PA 18503
(570) 344-2667